**LONE STEER, INC., Plaintiff,**

v.

**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, et al., Defendants.**

**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Petitioner,**

v.

**LONE STEER, INC., a corporation, Respondent.**

**Nos. A1–82–10, A1–82–24.**

United States District Court,
D. North Dakota,
Southwestern Division.

Oct. 28, 1982.

Richard G. Peterson, Fargo, N.D., for plaintiff in No. 82–10.

Henry C. Mahlman, Assoc. Reg. Sol., Denver, Colo., Charles S. Miller, Jr., Asst. U.S. Atty., Bismarck, N.D., for petitioner in No. 82–24.

T. Timothy Ryan, Henry C. Mahlman, Denver, Colo., Tedrick A. Housh, Jr., Washington, D.C., Charles S. Miller, Jr., Bismarck, N.D., for defendants in No. 82–10.

Richard G. Peterson, Fargo, N.D., for respondent in No. 82–24.

## ORDER

VAN SICKLE, District Judge.

These cases, which were consolidated for purpose of trial, are now before the Court on cross motions for summary judgment. All operative facts have been stipulated. The central issue, resolution of which is dispositive in both cases, is whether the Secretary of Labor (through his agents) may proceed with an inspection of Lone Steer's records under Section 11 of the Fair Labor Standards Act (29 U.S.C., § 211) without having obtained a judicially issued warrant.

The facts agreed upon and material to a resolution of the issue stated, are as follows:

*1.* Section 11 of the Fair Labor Standards Act provides, *inter alia,* that officers of the Wage-Hour Division of the United States Department of Labor may enter upon the premises of certain business establishments and conduct investigations with an eye to compliance with the act and related regulations. In most cases, the compliance officer arranges an appointment with the owner or manager of the business establishment for that purpose.

*2.* The compliance officer is under instructions to review compliance throughout the particular establishment then being reviewed, without regard to the basis upon which the investigation was scheduled and without limiting or circumscribing the scope of the investigation. In the instant case, the investigation sought to be conducted is unlimited in scope.

*3.* On January 6, 1982, a compliance officer with the Wage & Hour Division of the Department, Al Godes, whose office is in Bismarck, North Dakota, telephoned Lone Steer, Inc., a motel-restaurant located in Steele, North Dakota, and informed its manager, Süsann White, that he would commence an investigation of the establishment the following morning at 9:00 o'clock, A.M. He also told Ms. White to have available time, wage and payroll records for all employees for the last two years. Later that day, Mrs. White called Mr. Godes back and advised him that it was not convenient for Mr. Godes to conduct the investigation the following morning.

*4.* On January 7, 1982, Mr. Godes sent Ms. White a letter informing her that he had rescheduled the investigation of Lone Steer for January 14, 1982, at 9:00 o'clock, A.M.

*5.* On January 12, 1982, the attorney for Lone Steer, Richard G. Peterson, called Mr. Godes concerning the investigation of Lone Steer. Mr. Peterson advised Mr. Godes that he might be able to meet with Mr. Godes at Lone Steer, but that he would get back to Mr. Godes to confirm.

*6.* The same day, January 12, Mr. Peterson sent Mr. Godes a letter informing him that:

I represent Lone Steer Cafe in Steele, North Dakota.

Before we consider your request to conduct an inspection, we request disclosure from you as to whether the inspection is prompted by specific complaint(s). If so, we request disclosure of the nature of the complaint(s).

If, on the other hand, you propose a general administrative inspection for compliance—not prompted by specific complaint—we request to know the scope of the investigation.

Until this matter is resolved, you do not have permission to conduct an investigation.

*7.* On January 14, Mr. Godes called Lone Steer, but was unable to reach Ms. White. Later that day, after Mr. Godes received the January 12 Peterson letter, Mr. Godes placed two more calls to Lone Steer, but was still unable to reach Ms. White.

*8.* Mr. Godes forwarded Mr. Peterson's January 12 letter to the Regional Office of the Wage & Hour Division in Denver, Colorado. On January 20, 1982, the Assistant Regional Administrator for the Wage & Hour Division, Loren E. Gilbert, sent a letter to Mr. Peterson which stated:

This is in response to your letter of January 12, 1982, to Al Godes, in which you request disclosure whether the investigation is a "general administrative inspection for compliance" or "prompted by specific complaint(s)." Under section 11 of the Act (29 U.S.C. 211), the Secretary may institute an investigation whether or not a complaint has been filed and, thus, the motive for the investigation will not be given. See *Cudahy Packing Co. v. Fleming,* 122 F.2d 1005 (8th Cir.1941). Generally the scope of an investigation in any case consists of reviewing records, making transcriptions of records, and interviewing employees. Other facts and matters may be investigated when appropriate to determine the firm's compliance with the Fair Labor Standards Act.

I have instructed Mr. Godes to initiate this investigation on Tuesday, February

2, 1982, at 10:30 a.m. at Lone Steer's offices in Steele, North Dakota. If the firm intends to prohibit him from making this investigation at that time, please let me know so that I can request an administrative subpoena in order to conduct the investigation.

Mr. Godes was instructed to attempt the investigation in the company of Gerald Hill, Assistant Area Director, Denver.

9. Mr. Gilbert's letter was received by Mr. Peterson on January 25. On January 28, Mr. Peterson called Mr. Gilbert to reiterate that Mr. Godes did not have permission to investigate Lone Steer. Mr. Gilbert was also advised that a warrant from an independent magistrate would be required under the ruling of the Supreme Court of the United States in *Marshall v. Barlow's, Inc.* Mr. Godes was thereupon directed by Mr. Gilbert to attempt the investigation of Lone Steer and, in the likely event of refusal, to serve Lone Steer with an administrative subpoena duces tecum.

10. On February 2, 1982, at approximately 10:30 a.m., Mr. Godes, accompanied by Mr. Hill, entered the Lone Steer establishment in an attempt to conduct an investigation. After some delay, and in the absence of Ms. White, Mr. Godes served an administrative subpoena duces tecum on a Lone Steer employee, Karen Arnold. The parties are in agreement that Lone Steer, Inc., was properly served with the administrative subpoena duces tecum.

11. The administrative subpoena duces tecum was issued in Washington, D.C., on January 28, 1982, over the signature of William Otter, Administrator of the Wage and Hour Division, and directed to "any officer, agent or employee of Lone Steer, Inc., a corporation, ... having custody, personal knowledge, and information regarding the books, papers and documents described below."

12. On February 8, 1982, Mr. Peterson called Henry Mahlman, Counsel for the United States Department of Labor in Denver, Colorado, to advise that Lone Steer would not acknowledge and comply with the administrative subpoena duces tecum.

This position was confirmed in a letter to Mr. Mahlman dated February 10, 1982. This letter stated:

This letter is pursuant to our telephone conference on February 8, 1982 when I informed you that we view the Administrative Subpoena, attached hereto, issued by the Wage-Hour Administrator, U.S. Department of Labor, as invalid under the Fourth Amendment and the clear holding of Secretary of Labor *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). Accordingly, I further informed you that Lone Steer, Inc. would respectfully decline to respond to it. I also informed you that we are ready to defend against any motion or action the Labor Department deems appropriate to resolve the issue.

The U.S. Supreme Court in *Barlow's* stressed the "presumptive" invalidity of warrantless inspections under regulatory statutes. We believe there is little doubt that a broad discovery device, a Subpoena, issued by the Department itself, cannot be utilized when entry to an employer's premises for purposes of a search and seizure is denied. As you recall, in *Barlow's,* your Department obtained a Court Order, under "compulsory-process" provisions of OSHA, which was held invalid under the Fourth Amendment.

The issue is so important that we request that this matter be referred as expeditiously as possible to a forum for resolution. Accordingly, I am taking the extraordinary step of sending a copy of this letter to the U.S. District Court.

The actions of the Secretary, as described above, unquestionably comport with the provisions of the Fair Labor Standards Act, as amended, 29 U.S.C., § 201 *et seq.* Section 11(c) of the Act and its implementing regulations (29 C.F.R. 516) specifically authorize the Secretary's representatives to inspect, review and transcribe the records described in the administrative subpoena, and require Lone Steer to make those records available for such purposes. Section 9 of the Act (29 U.S.C., § 209) provides that, for purposes of such compliance investiga-

tions, the provisions of Sections 9 and 10 of the Federal Trade Commission Act are made applicable to the investigatory powers of the Secretary of Labor. Section 9 of the Federal Trade Commission Act (15 U.S.C., § 49) in turn establishes the authority "... to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation, ..." and for the enforcement of such subpoenas by the courts of the United States. And, Section 10 of the Federal Trade Commission Act (15 U.S.C., § 50) makes refusal to comply with such a subpoena an offense punishable by fine or imprisonment, or both.

Lone Steer asserts that this statutory scheme is constitutionally impermissible, and that the records described in the administrative subpoena issued in this case need not be produced except in response to a warrant issued by a judicial officer upon a showing of probable cause. Lone Steer's exclusive authority for this position is the case of *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978).

The Secretary, on the other hand, contends that *Barlow's* does not erode previously established authority to the contrary and argues that that case has no application to Section 11 of the Fair Labor Standards Act.

A safety and health inspection under the provisions of OSHA (Occupational Safety and Health Act, 29 U.S.C., § 651 et seq.) was the object of an attempted warrantless entry upon the premises of Mr. Barlow's electrical and plumbing installation business. Upon the Secretary's petition, a show cause order was issued by the federal district court and, subsequent to a show cause hearing, the Secretary's application for an order compelling entry, inspection and investigation was granted. Mr. Barlow again declined to permit entry and inspection, basing his refusal on the absence of a search warrant. The case squarely presented the issue of whether the entry and inspection provisions of the Occupational Safety and Health Act are consistent and compatible with the prescriptions of the

Fourth Amendment. A three-judge district court held that the inspection provisions of OSHA, insofar as they authorize warrantless inspections of those commercial establishments covered by the Act, are unconstitutional and in violation of the Fourth Amendment. See: *Barlow's Inc. v. Usery, et al.*, 424 F.Supp. 437 (D.C., D.ID 1977).

The Supreme Court, in affirming the lower court decision, held that the Fourth Amendment prohibits nonconsensual inspections in the work areas of business for the purpose of safeguarding employees against hazards; however, probable cause, in the criminal law sense, is not required as a basis for the issuance of a warrant. *Marshall, et al. v. Barlow's, Inc.*, 436 U.S. 307, 320, 98 S.Ct. 1816, 1824, 56 L.Ed.2d 305. The probable cause which justifies the issuance of a warrant for the purpose of conducting an administrative search may be based not only on evidence of an existing violation of a statute or regulation, but may also be found on a showing that "reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment]." *Camara v. Municipal Court*, 387 U.S. 523, 538, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967), quoted with approval in *Barlow's, supra*, 436 U.S. at page 320, 98 S.Ct. at 1824.

The Secretary's argument that *Barlow's* does not apply to Section 11 investigations is untenable. It is reasonable to conclude that the exigencies of an entry upon commercial premises for the purpose of conducting a safety and health inspection designed to protect the personal well-being of employees supply more compelling bases for proceeding without a warrant than the circumstances presented here, where entry is sought for the purpose of determining compliance with wage and hour regulations. The reasoning of the Supreme Court in *Barlow's* applies with equal—if not greater—force in the instant situation.

In sum, I hold that the Secretary of Labor may *not* proceed to enter upon the premises of Lone Steer, Inc., for the purpose of inspecting its records under Section

11 of the Fair Labor Standards Act without first having obtained a valid warrant.

Now Therefore, the Court having considered the cross motions for summary judgment, together with briefs and all other pertinent documents on file herein, and having concluded that there are no material facts at issue in either of the captioned cases, and that Lone Steer, Inc., is entitled to a judgment as a matter of law, it is

ORDERED that summary judgment in favor of Lone Steer, Inc., and against Raymond J. Donovan, Secretary of Labor, United States Department of Labor, in each one and both of the above captioned cases, be entered by the Clerk. No costs to either party.