BOWLES, Price Administrator, Office of Price Administration, v. CURTISS CANDY CO.

No. 1675.

District Court, W. D. Missouri, W. D.

Jan. 21, 1944.

Supplemental Opinion April 19, 1944.

Amos J. Coffman, Regional Enforcement Executive, of Dallas Tex., Jerome Walsh, District Enforcement Atty., and Walter E. Walsh, Enforcement Atty., both of Kansas City, Mo., for plaintiff.

Walker & Atwood, of Chicago, Ill., and Bowersock, Fizzell & Rhodes, of Kansas City, Mo., for defendant.

REEVES, District Judge.

The defendant by its motions seeks, (a) to have the complaint dismissed, (b) to dissolve the injunction, (c) to require the complainant to supply a bill of particulars, and (d) to suppress evidence. These will be noticed in their order.

The complaint contains several counts. Many of them are subsidiary and remedial in their nature and arise from the alleged violations of the Emergency Price Control Act, 50 U.S.C.A.Appendix § 901 et seq., mentioned in the first count.

It is stated in the first count that the defendant is an Illinois corporation with its principal place of business in Chicago and that it is engaged in the business of "manufacturing, distributing and selling" candy bars, bearing such names as "Baby Ruth," "Butterfinger," "Jolly Jack," etc.

From the complaint it would appear that the defendant has established business in all parts of the United States and that it disposes of its product promiscuously to franchise, wholesale, and retail dealers. It carries on its business within this federal district.

In the month of March, 1942, defendant had a schedule of prices prevailing in its transactions with its customers. These prices were for candy bars and packages of an ascertained and fixed weight. However, after March, 1942, the defendant as is alleged in the petition sold its candy bars, packages, etc., at the same price but with a considerable reduction in the size and weight. The Administrator, claiming that this was a violation of the act, instituted this suit wherein an injunction was and is sought and penalties for the violation of the act were invoked.

1. The motion to dismiss the complaint contains many averments with respect to the alleged inadequacies of the complaint. The complaint, however, complies with the new rules of pleadings. It sufficiently advises the defendant that its candy bars packaged in boxes and cartons had been reduced in size and weight after the prices had been frozen as of March, 1942. The complaint must be construed as applying to the precise merchandise, as variously labeled and designated, manufactured and sold by the defendant in March, 1942. It is a simple charge that the identical articles were reduced in size and weight so as to have the effect of increasing the price. Such a procedure would have that effect. Brown v. Mars, Inc., 8 Cir., 135 F.2d 843. The complaint states a cause of action, and the motion to dismiss should be overruled.

2. The defendant next complains that the injunction should be dissolved for the reason that the preliminary restraining order was issued without notice.

When the preliminary restraining order was granted it was then supposed that local counsel represented the defendant and was authorized to participate in the hearing. However, an inspection of the preliminary restraining order shows that it contained all of the recitals justifying the issuance of such an order without notice. This question, moreover, becomes moot for thereafter a hearing was had on the application for a temporary injunction and it appeared conclusively that the defendant had been notified of such hearing. Under the circumstances the motion to dissolve the temporary injunction should be overruled.

3. The motion for a bill of particulars is in the nature of a complaint that the petition of the Administrator does not apprise the defendant of such facts as would enable it to file its responsive pleading.

As indicated in paragraph marked "1", the Administrator charges that candies with identical labels and designations on boxes, packages and cartons being sold in March, 1942, were reduced in weight in violation of the act. It would follow that the defendant is fully apprised of the nature of the proceeding and knows precisely what the contentions are. Either it reduced the size and weight of its candies or it did not. If it did, under the Mars case, supra, it is liable to the relief sought by the Administrator. The motion for a bill of particulars therefore should be denied.

4. The motion to suppress evidence is a challenge to the act of the investigators on behalf of the Administrator in obtaining the information upon which this action is predicated. The act quite clearly authorizes the Administrator "to make such studies and investigations and to obtain such information as he deems necessary or proper to assist him * * * in the administration and enforcement of this Act and regulations, orders, and price schedules thereunder." 50 U.S.C.A.Appendix § 922. The examiners, therefore, were within their rights in making an investigation and inspection of the records and thereafter employing the results of such investigation in preparing this action. The motion to suppress evidence should be denied.

5. In the motion to dismiss the defendant challenges the right of the Ad-

ministrator to sue for the penalties prescribed in the statute. It is argued that this right accrued only in favor of a purchaser. It is provided by Section 205(e) of the Act, 50 U.S.C.A.Appendix § 925(e), that: " * * * the person who buys such commodity for use or consumption other than in the course of trade or business may bring an action either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater, plus reasonable attorney's fees and costs as determined by the court."

The inferences from the complaint are that the sales in violation of the act were made "in the course of trade or business", and that under such circumstances the purchaser would be denied the right to bring suit. In the same section it is thereafter provided that: "If * * * the buyer is not entitled to bring suit or action under this subsection, the Administrator may bring such action under this subsection on behalf of the United States."

The defendant has raised other questions in its multiple motions but many of these are defensive and can be interposed and asserted in its answer. The challenge to the constitutional validity of portions of the act need not be noticed for the reason that such provisions have been upheld.

Proper orders in accordance with the above will be made.

### Supplemental Memorandum Opinion.

January 22, 1944, a memorandum opinion on the several motions filed by the defendant was lodged with the clerk. At the request of counsel for the defendant this memorandum was temporarily withdrawn upon the theory that the defendant had not been afforded an opportunity to make arguments and present briefs on the several matters covered by its motions.

Since that time arguments have been heard and supplemental briefs have been filed and the entire case has been carefully re-examined. The principal insistence by the defendant is that, (a) the complaint is insufficient in law, and that, (b) the evidence obtained by the plaintiff through its inspectors should be suppressed. The defendant does not abandon its motion for a bill of particulars and to dissolve the preliminary injunction.

All of these will again be noticed.

1. The complaint in quite extensive detail sets out the Emergency Price Control Act, its object and purpose, and with precise language alleges violation thereof by the defendant. For such violations it seeks to invoke penalties authorized by statute. These statutes under which the plaintiff seeks to act are found under the general subject of Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix § 901, and succeeding sections. The purpose of the act is substantially declared to be a war measure and its constitutional validity is not challenged. On the enforcement of penalties, subparagraph (e), Section 925 of said Title, specifically permits a person who buys a commodity subject to the act, if and when such purchase is not made in the course of trade or business, to "bring an action either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, * * *." This provision is apparently a concession in favor of the ultimate consumer. In this case the complainant asserts that the violations of the act or regulations based thereon were accomplished "in the course of trade or business" and the complainant seeks to apply that portion of said subparagraph (e) as follows:

"If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer is not entitled to bring suit or action under this subsection, the Administrator may bring such action under this subsection on behalf of the United States."

The complaint contains appropriate averments to entitle the administrator to maintain this action.

The defendant in an able and lucid argument for the dismissal of the complaint stated that the exhibits attached to the complaint showed that the action was predicated upon averages and not specific weights and therefore was inadequate. The complaint does not purport to be so predicated, and, moreover, the "exhibits" mentioned by able counsel were affidavits designed to support the application for an injunction. Such affidavits did contain statement of averages. However, such affidavits were evidentiary in their nature and this is the only function the complainant intended them to perform.

In the case of Brown v. Mars, 8 Cir., 135 F.2d 843, loc.cit. 854, the Court of Ap-

peals ruled that such averages had evidential or probative value. The court said:

"There seems no reason why average weight should not be evidence for calculation of fair individual weights, provided such averages were determined in a fair and representative manner."

The complaint is invulnerable as against the motion to dismiss.

2. The next point emphasized by the defendant and ably and exhaustively argued and briefed is that the complainant violated the constitutional rights of the defendant, and particularly Amendment 4 of the national Constitution which vouchsafes security "against unreasonable searches and seizures." The object of this amendment is to protect the people, including corporations, against unreasonable search and seizure of private papers.

This amendment does not extend its protective aegis about an artificial entity to the same extent that it does about a natural person. The subject was ably and extensively discussed by Mr. Associate Justice Hughes, later Chief Justice, in the well known case of Wilson v. United States, 221 U.S. 361, loc.cit. 380, 382, 383, 384, 31 S.Ct. 538, loc.cit. 545, 55 L.Ed. 771, Ann.Cas.1912D, 558. In substance, the court said that " * * * the corporate form of business activity, with its chartered privileges, raises a distinction when the authority of government demands the examination of books." The right of such examination is enjoyed initially by the sovereign under whose laws the corporation is formed. The visitatorial power of the state is ordinarily reserved. Mr. Justice Hughes significantly said, relative to the reservation of visitatorial powers to the state: " * * * and in the authority of the national government where the corporate activities are in the domain subject to the powers of Congress." A corporation is incorporated for the benefit of the public. It holds its special privileges and franchises subject to limitations of law and always there is a reserved right in the legislative authorities to provide for investigations. The court epitomized the rule by an excerpt from previous decisions as follows:

" ' * * * Being subject to this dual sovereignty, the general government possesses the same right to see that its own laws are respected as the state would have with respect to the special franchises vested in it by the laws of the state. The powers of the general government in this particular in the vindication of its own laws are the same as if the corporation had been created by an act of Congress.' "

In that connection the court did say:

" 'It is not intended to intimate, however, that it has a general visitatorial power over state corporations.' "

This latter comment by the court requires reference to the federal act by the authority of which the government granted visitatorial power in respect of the defendant.

Section 922 of said Title, 50 U.S. C.A.Appendix, specifically authorizes the Administrator "to make such studies and investigations and to obtain such information as he deems necessary or proper to assist him in prescribing any regulation or order under this Act, or in the administration and enforcement of this Act and regulations, orders and price schedules thereunder."

Subparagraph (b), of said Section 922, empowers the Administrator to require any person or corporation "to make and keep records and other documents, and to make reports, and he may require any such person to permit the inspection and copying of records and other documents, the inspection of inventories," etc.

Under the same section books and documents may be subpoenaed for purposes unnecessary here to set out.

It will be observed from these provisions that the government by express statute during the emergency of a great war has asserted a visitatorial power over state corporations.

It is a fundamental rule that the constitutional immunities from search are waived to a limited extent by those who engage in a business regulated by law. 56 C.J. p. 1180, § 64.

The Court of Appeals, this circuit, in Walling v. Benson, 137 F.2d 501, 149 A.L.R. 186, had before it the consideration of a compliance order. In the discussion, by analogy, the court employed applicable and pertinent reasoning for this case. According to syllabus 5, the views of the court were expressed as follows:

"In a field of declared public interest, the courts must give full, facilitating cooperation to exercise of authorized administrative powers and duties, if no pos-

sible threat to fundamental concepts is involved."

The court, in the Walling-Benson case, fully upheld inquiries such as involved in this case when made for "investigatory purposes under the Act."

The Court of Appeals, this Circuit, also had before it a compliance order in Cudahy Packing Co. v. Fleming, 122 F.2d 1005. In that opinion (122 F.2d loc.cit. 1008) the court treated a subpoena for records as being, " * * * in administrative effect, a mere implementation of the power of inspection conferred by that section." The court further said:

"Where there has been a clear grant of an administrative power * * * in a field of declared public interest, and the statute is subject to two reasonable constructions as to the manner in which the power may be exercised, one of which will facilitate performance of the prescribed administrative duties, and the other of which will impede it, the court should adopt the facilitating construction, if no fundamental rights are thereby violated or impaired."

According to the affidavits, the inspection was undertaken, as expressed by the inspectors to the defendant, for the purpose of acquiring general information. Apparently in the course of such inspection or investigation, fully authorized by statute, the inspectors discerned matters which suggested violations of the law or non-compliance with orders and regulations prescribed by the administrator. Whatever the original purpose it would quite obviously become the duty of the inspectors to ascertain whether or not the defendant was complying with the law. This could not be considered an unreasonable search in view of the visitatorial right conferred by statute. The inspectors did nothing that they would not have a right to do under the law.

3. When a temporary restraining order was originally granted some question arose as to whether proper notice was given to the defendant. Conceding, for the purposes of this discussion, that the defendant was without notice and that the application for a restraining order did not contain appropriate averments, yet subsequently the defendant was notified and a temporary injunction has been issued. It would be futile to dissolve an injunction which, according to the averments of the complaint

with supporting affidavits, should again immediately be put in effect.

4. The motion for a bill of particulars is without merit. The complaint elaborately and in great (probably too great) detail sets out data and matters gleaned from the records of defendant and with which the defendant must be familiar. The information of the complaint was obtained from the defendant's records. It would be idle to require complainant to furnish particulars of the complaint to his adversary when such adversary is in possession of and probably familiar with all such demanded particulars. Moreover, the new rules of federal procedure afford the defendant ample authority to obtain by discovery all of the facts not readily available to it.

The original memorandum opinion should stand as correct and this memorandum will be made supplemental to it.

The original order overruling the several motions interposed by the defendant will be refiled as of this date.